## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *versus* | : | CRIMINAL NO. 15-133-JWD-SCR |
| | : | |
| WILLIAM "WILL" ROS | : | |

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and WILLIAM "WILL" ROS ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

### A.     THE DEFENDANT'S OBLIGATIONS

#### 1.     Guilty Pleas

The defendant agrees to enter pleas of guilty to Count 9 of an Indictment charging him with wire fraud in violation of 18 U.S.C. § 1343 and Count 14 charging him with embezzlement against bankruptcy estate in violation of 18 U.S.C. § 153.

#### 2.     Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court.  Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request.  Any financial information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

### 3. Cooperation

The defendant hereby waives the Fifth Amendment privilege against self-incrimination and agrees to cooperate with the United States by providing complete and truthful information whenever, wherever, to whomever, and in whatever form an attorney for the United States or federal law enforcement agent requests, including by providing oral answers to questions, written statements, answers to interrogatories, testimony in court, testimony before a grand jury, and documents and other items.

The defendant also agrees to actively participate in reasonable investigative activities at the direction of federal law enforcement agents.

The United States is not obligated to receive, agree to, or act upon information or other cooperation which the defendant may wish to provide.

Except as otherwise provided herein or in USSG § 1B1.8(b), no truthful testimony or statements by the defendant or act of producing documents or items by the defendant pursuant to this agreement, or any evidence or information derived therefrom, will be used against the defendant in the United States' case-in-chief in a criminal trial or in sentencing the defendant in this case, except to advise the Court of the extent and value of the defendant's cooperation or to support a motion under USSG § 5K1.1 or Fed. R. Crim. P. 35. The United States may use all statements made by the defendant and the defendant's act of producing documents or items, and any evidence or information derived therefrom, in any other manner, including as follows: in rebuttal at any criminal trial, to cross examine the

defendant in any trial or proceeding, in forfeiture proceedings, evidentiary hearings, or civil or administrative hearings, and in its case-in-chief in any prosecution for perjury, making false statements or declarations, or obstruction of justice committed on or after the effective date of this agreement.

## B.     UNITED STATES' OBLIGATIONS

### 1.     Non-prosecution/Dismissal of Charges

The United States agrees that, if the Court accepts the defendant's guilty pleas, it will move to dismiss the remaining counts of the Indictment after sentencing, and it will not prosecute the defendant for any offense related to the offenses charged in the Indictment.

### 2.     Motion for Third Point for Acceptance of Responsibility

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter pleas of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.  The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level.  The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement,

including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

### 3.    Advising Court of Cooperation

The United States agrees to inform the Court at or before sentencing of the extent and value of any cooperation by the defendant pursuant to this agreement, regardless of whether such cooperation constitutes "substantial assistance" within the meaning of USSG § 5K1.1. The evaluation of whether and to what extent the defendant has cooperated with the United States, and the value of any cooperation, shall be solely within the discretion of the United States.  The United States is not obligated to file any motion with the Court based on the defendant's cooperation, including any motion under USSG § 5K1.1 or Fed. R. Crim. P. 35. If a motion is filed, the Court, in its sole discretion, may or may not grant a departure from the United States Sentencing Guidelines or reduce the sentence after its imposition.

## C.    SENTENCING

### 1.    Maximum Statutory Penalties

The maximum possible penalty on Count 9 is a term of imprisonment of 20 years, a fine of up to $250,000 or twice the gross gain or twice the gross loss, whichever is greater, and a term of supervised release of three years.

The maximum possible penalty on Count 14 is a term of imprisonment of five years, a fine of up to $250,000 or twice the gross gain or twice the gross loss, whichever is greater, and a term of supervised release of three years.

In addition to the above, the Court must impose a special assessment of $100 per count which is due at the time of sentencing.  The Court may also order restitution.

### 2.     Supervised Release

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

### 3.     Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court. The Court could impose any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

### 4.     No Agreement Regarding Sentencing

Except as set forth in this agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the parties reserve the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing.

### 5.     Forfeiture

The defendant agrees to forfeit any property constituting, or derived from, proceeds he obtained directly, or indirectly, as a result of the offense charged in Count 9 of the

Indictment.   The defendant admits that the amount of the proceeds derived from the offense was $966,257.   He therefore agrees to forfeit to the United States a sum of money equal to $966,257 in United States currency and consents to entry of a personal money judgment against him in such amount.

The defendant admits that he owns the property identified in the Notice of Forfeiture in the Indictment and that such property constitutes or was derived from proceeds of the offense charged in Count 9 of the Indictment.   He therefore agrees to forfeit his interest in such property and consents to the entry of orders of forfeiture for such property.   The defendant understands that, in imposing his sentence, the Court is not limited to forfeiture of the above described property but may order forfeiture of any property, including substitute assets, which is subject to forfeiture in accordance with the Notice of Forfeiture in the Indictment.

The defendant understands that forfeiture of his property, including by payment of a money judgment, will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon him as part of his sentence.   The defendant further understands that, separate and apart from his sentence in this case, the United States may also institute civil or administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture.   The defendant agrees to waive his interest in the property identified in the Notice of Forfeiture in the Indictment in any such civil or administrative forfeiture proceeding.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and

forfeiture of all forfeitable assets, including taking all steps as requested by the United States

to pass clear title to forfeitable assets to the United States. The defendant agrees to hold the

United States, its agents, and its employees harmless from any claims whatsoever in

connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional

defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine

or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is

aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R.

Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and

determine that the defendant understands, the applicable forfeiture prior to accepting the

defendant's pleas.

## D.    **FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

William Ros used an October 20, 2010 wire transmission between Gonzales,
Louisiana and Mobile, Alabama to embezzle funds from the bankruptcy estate of
Fundamental Provisions, LLC. With the proceeds of the embezzlement scheme, Ros caused
a December 9, 2010 wire transfer of $30,000 from his local Regions Bank account to a San
Francisco, California Wells Fargo account of the seller of a 2005 Ford GT race car. In total,
during the period August 2009 through May 2012, Ros embezzled and appropriated to his
own use approximately $966,257.

Fundamental Provisions, LLC ("Fundamental") was a business based in Gonzales,
Louisiana, which owned and operated 30 Popeyes' Fried Chicken and Biscuits ("Popeyes")
franchise restaurants in Alabama, Florida, and Louisiana. The owner of Fundamental
(hereafter referred to as "the owner") also served as the company's Chief Executive Officer.
Fundamental had gross annual revenues in excess of $20,000,000.

William "Will" Ros ("Ros"), defendant herein, was the Chief Financial Officer
("CFO") of Fundamental. As CFO, Ros was responsible for the daily management and
operations of multiple Popeyes restaurants located in Alabama and Florida, including

supervision of, and frequent communication with, store managers 1 and 2 (hereafter referred to as "Manager 1" and "Manager 2"). Ros was also responsible for assuring that funds generated by each restaurant were used for the benefit of Fundamental. Ros was paid more than $430,000 for his services as Fundamental's CFO between January 2009 and December 2011.

Manager 1 was an area-wide manager of Popeyes restaurants in Alabama and Florida. Manager 2 was a district manager of approximately six Popeyes restaurants in Alabama. Manager 2 reported to Manager 1, and both men were subordinates of, supervised by, and responsive to, Ros.

In December 2009, in the United States Bankruptcy Court for the Middle District of Louisiana, Fundamental sought, and received, bankruptcy protection which authorized the company to reorganize its management and restructure its debt so that it could continue operating its business and thereafter pay debts it owed to numerous creditors (hereafter the "Bankruptcy Court proceedings").

A Chief Restructuring Officer ("CRO") was employed in January 2010 and authorized to control all business operations, including disbursements of company funds, employment of key personnel, and incurrence of debt. The CRO employed and paid Ros to act as Fundamental's CFO.

Because the reorganized company was unable to make payments to its creditors as promised in December 2011, Fundamental was placed in involuntary bankruptcy in March 2012. A Trustee was appointed by a Bankruptcy Judge for the purpose of liquidating the company's assets in order to pay substantial debts owed by Fundamental to its creditors. With approval of the Bankruptcy Judge, the Trustee appointed a Chief Operating Officer ("COO") to assist with the liquidation process. The COO continued Ros's employment as Fundamental CFO until in or about May 2012.

Ros used his position as Fundamental's CFO to cause restaurant managers to divert restaurant revenues to his personal benefit. Specifically, Ros used his position as Fundamental's CFO to mischaracterize and cause the recording of fictitious purchases to disguise the fact that he had caused managers to remove funds from the restaurants' cash registers for his personal benefit.

Beginning in or about August 2009, Ros directed Manager 1 to remove monies from restaurant cash registers and either deliver it to him (Ros) or mail FedEx packages of cash to persons identified by Ros.

Beginning in or about March 2010 and continuing through in or about March 2012, Ros directed Manager 2 to remove monies from restaurant cash registers and deposit such funds into either---

    i.  Ros's personal Regions Bank account #2741;

    ii.  Ros's girlfriend's Regions Bank account #1776;

    iii.  Ros's golf club supplier's Regions Bank account #1900; or

    iv.  Ros's family friend's Regions Bank account #9513.

Ros also instructed Regions Bank personnel to send money via wire transfers to his girlfriend for the purpose of renovating and upgrading his Florida home and to an individual in California from whom Ros purchased a Ford GT race car.

Ros used smart telephones to text message his instructions to Manager 1 and Manager 2. Ros used his position as Fundamental's CFO to conceal his repeated diversions of company funds.

Between March 23, 2010 and April 26, 2011, Ros caused cash in the amount of about $229,457 to be taken from the cash registers of Fundamental's restaurants and deposited into his personal Regions Bank account #2741.

On or about October 20, 2010, Ros, while located in Gonzales, Louisiana, sent a text message to Manager 2 instructing him to mail diverted cash in the amount of $12,155, as partial payment to LFD in Riverside, California, an individual who agreed to sell Ros a 2005 Ford GT race car.

On or about December 9, 2010, Ros caused a wire transfer in the amount of $30,000 from his personal Regions Bank account #2741 to Wells Fargo Bank account #9989 in San Francisco, California as partial payment for the purchase of a 2005 Ford GT from LFD.

Ros, as an agent and employee of the Chief Restructuring Officer, Chief Operating Officer, and Trustee of the bankruptcy estate of Fundamental Provisions, LLC, and who had access to, participated in, and performed services for the estate, knowingly and fraudulently embezzled and appropriated to his own use approximately $966,257, which money belonged to the bankruptcy estate.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the defendant further agree that such facts are sufficient to support conviction of the

offenses to which the defendant has agreed to plead guilty.  The defendant understands that,

by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of

sentencing.  Rather, in determining the factual basis for the sentence, the Court will consider

the stipulation, together with the results of the presentence investigation and any other

relevant information.

## E.    BREACH AND ITS CONSEQUENCES

### 1.    Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this

agreement:

a.     failing to plead guilty to Counts 9 and 14 of the Indictment at re-arraignment;

b.     representing, directly or through counsel, to the United States or the Court that he will not plead guilty to Counts 9 and 14 of the Indictment;

c.     moving to withdraw his guilty pleas;

d.     filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

e.     disputing or denying guilt of the offenses to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

f.     concealing or disposing of assets with the specific intent of shielding such assets from forfeiture;

g.     refusing to provide information or testimony;

h.     providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

i.     violating the terms of this agreement in any other manner.

2.    **Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement.  In particular, the United States may prosecute the defendant for any criminal offense.  In addition, any statements and information provided by the defendant pursuant to this agreement or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation.  Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty pleas), and statements made in the course of plea discussions.  The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel).  The defendant is not entitled to withdraw his guilty pleas.

3.    **Procedure for Establishing Breach**

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement as a result of a breach by the defendant.  After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach.  However, the United States will obtain a judicial determination regarding breach prior to using

statements and information provided by the defendant or any act of producing documents or

items by the defendant pursuant to this agreement, or any evidence or information derived

therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case.

The standard of proof in any proceeding to determine whether the plea agreement has been

breached is preponderance of the evidence.  To prove a breach, the United States may use (1)

any and all statements of the defendant, (2) any and all statements of his counsel to the Court

(including the United States Probation Office), and (3) any representation by defense counsel

to the United States that the defendant will not plead guilty.

F.     **WAIVERS BY THE DEFENDANT**

      1.     **Waiver of Trial Rights**

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a

not guilty plea and waives the right to a jury trial.  At a trial, the defendant would have the

trial rights to be represented by counsel, to confront and examine adverse witnesses, to be

protected against compelled self-incrimination, to testify and present evidence, to compel the

attendance of witnesses, and to have the jury instructed that the defendant is presumed

innocent and the burden is on the United States to prove the defendant's guilt beyond a

reasonable doubt.  By waiving his right to a trial and pleading guilty, the defendant is

waiving these trial rights.

      2.     **Waiver of Appeal and Collateral Remedies**

Except as otherwise provided in this section, the defendant hereby expressly waives

the right to appeal his conviction and sentence, including any appeal right conferred by 28

U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any

post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2). This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation. The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court. Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

### 3. <u>Waiver of Statute of Limitations</u>

The defendant hereby waives all defenses based on the applicable statutes of limitation as to all offenses charged in the Indictment including those that the United States has agreed to dismiss in Section B(1) and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement. The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement. The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

**4.      Waiver of Speedy Trial Rights**

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to all offenses charged in the Indictment including those that the United States has agreed to dismiss in Section B(1).  The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

**G.      EFFECT OF AGREEMENT**

**1.      Effective Date**

This agreement is not binding on any party until signed by the defendant, defendant's counsel, and an attorney for the United States.  Once signed by the defendant, his counsel, and an attorney for the United States, the agreement is binding on the defendant and the United States.

**2.      Effect on Other Agreements**

This agreement supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

**3.      Effect on Other Authorities**

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

4.     **Effect of Rejection by Court**

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement. If the Court rejects the plea agreement, the plea agreement is no longer binding on the parties and is not binding on the Court.  If the Court rejects the plea agreement, the defendant will be given the opportunity to withdraw his pleas and such withdrawal will not constitute a breach of the agreement.  If the defendant does not withdraw his pleas following rejection of the plea agreement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

H.     **REPRESENTATIONS AND SIGNATURES**

1.     **By The Defendant**

I, WILLIAM "WILL" ROS, have read this plea agreement and have discussed it with my attorney.  I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation.  I have not been threatened, intimidated, pressured, or coerced in any manner.  I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be.  I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

WILLIAM "WILL" ROS  Page 15  December 18, 2015

I have read the Indictment and have discussed it with my attorney. I fully understand the nature of the charges.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of Counts 9 and 14 of the Indictment.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_____                    DATE: _0/4/16_____

WILLIAM "WILL" ROS
Defendant

### 2.     By Defense Counsel

I have read this plea agreement and have discussed it with my client, WILLIAM "WILL" ROS, who is the defendant in this matter. I am satisfied that the defendant understands the agreement and is entering into it knowingly and voluntarily. The agreement accurately and completely sets forth the entire agreement between the defendant and the United States.

_____                    DATE: _0/5/16_____

Ralph S. Whalen, Jr.
Counsel for Defendant

**3.** **By the United States**

We accept and agree to this plea agreement on behalf of the United States. The

agreement accurately and completely sets forth the entire agreement between the defendant

and the United States.

_____

J. Walter Green
United States Attorney
Middle District of Louisiana

DATE: _1-4-16_____

_____

Rene I. Salomon
Assistant United States Attorney
Middle District of Louisiana

DATE: _1-4-16_____